**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ZECO, LLC, d/b/a ZEE COMPANY,** | ) | |
| | ) | |
| **Plaintiff/** | ) | **No 1:21-cv-00079** |
| **Counterclaim Defendant** | ) | |
| **v.** | ) | |
| | ) | |
| **ENVIRO TECH CHEMICAL** | ) | |
| **SERVICES, INC.,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant/** | ) | |
| **Counterclaimant** | ) | |

**ENVIRO TECH'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION TO COMPEL SUPPLEMENTATION OF**
**WRITTEN DISCOVERY RESPONSES AND DOCUMENT PRODUCTION**

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................4

II. RELEVANT FACTUAL BACKGROUND ..............................................................6

    A. General Overview of the Poultry Chilling Process ..................................................6

    B. Zee Provides Chemical Intervention Programs for Poultry Chilling Processes at Poultry

    Processor Facilities.......................................................................................................7

    C. Timeline of Zee's Responses to Enviro Tech's Discovery Requests.....................8

    D. Timeline of Attempts to Resolve Discovery Disputes ...........................................9

III. ARGUMENT ......................................................................................................12

    A. Zee's Document Production Is Deficient ............................................................12

    B. Zee's Response to the Requests for Production of Documents Do Not Comply with Rule

    34's Requirements......................................................................................................18

    C. Zee's Reliance on Rule 33(d) to Respond to Certain Interrogatories Is Improper...............20

    D. Zee's Responses to Requests for Admission Do Not Comply with Rule 36's Requirement

    that a Denial Must Fairly Respond to the Substance of the Matter............................21

IV. CERTIFICATION OF MEET AND CONFER.....................................................23

V. CONCLUSION AND RELIEF SOUGHT .............................................................23

# TABLE OF AUTHORITIES

**Cases**

*Beijing Fito Medical Co., Ltd. v. Wright Med. Tech., Inc.*, No. 15-cv-02258, 2016 WL 10518448, at *4 (W.D. Tenn. July 1, 2016) .................................................................................................. 20

*Brown v. Tellermate Holdings Ltd.*, No. 2:11-cv-1122, 2014 WL 2987051, at *15 (S.D. Ohio July 1, 2014) ....................................................................................................... 5, 12, 13, 15, 17

*Da Silva Moore v. Publicis Groupe & MSL Grp.*, 287 F.R.D. 182, 193 (S.D.N.Y. 2012) .......... 13

*DiLuzio v. Village of Yorkville, Ohio*, No. 2:11-cv-1102, 2016 WL 7406535, at *34 (S.D. Ohio Dec. 22, 2016) ................................................................................................................ 15

*DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 936 (N.D. Ill. 2021) . 16, 20

*Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 377 (S.D. Ind. 2009).............. 13, 18

*Procaps S.A. v. Patheon Inc.*, No. 12-24356, 2014 WL 800468, at *2 (S.D. Fla Feb. 28, 2014)  15

*Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125, 126 (S.D.N.Y. 2015) ............................................ 13

*State Farm Mut. Ins. Co. v. Pointe Physical Therapy, LLC*, No. 14-11700, 2017 WL 11379855, at *2 (E.D. Mich. Dec. 15, 2017) .......................................................................................... 21, 24

# I.   INTRODUCTION

Zee implements chemical intervention services for poultry processors. In return for a Redacted

████████████████████████, Zee installs ████████ Redacted ████████ equipment for operating the antimicrobial intervention program, which Zee ████████ Redacted ████████. (Ex. A; *cf* Ex. B at ¶ 6, 7.) Zee's proprietary Pathogen Control Center automates the process, relying on software that controls the addition of chemical solutions containing both Microtox® (peracetic acid ("PAA") that serves as an antimicrobial) and Nutrachill® (sodium hydroxide that raises the pH of the PAA-containing water) to chill tanks through which poultry carcasses are processed. (ECF No. 15, ¶ 43.)

U.S. Patent No. 10,912,321 ("the '321 patent"), owned by Enviro Tech, is directed to methods of treating poultry carcasses performed in a chill tank or other reservoir using PAA. (ECF No. 1-1.) The methods comprise contacting a poultry carcass with PAA-containing water at an alkaline pH, e.g., in the range of about pH 7.6 to about pH 10.0. (*Id.* at 61:31–58.) They include steps of repeatedly determining the pH of the PAA-containing water and adjusting it with an alkaline source to maintain the elevated pH. (*Id.*) Prior to about 2011, when PAA was used as the antimicrobial agent during the chilling process, equilibrium PAA was used at a pH of about 3.0 to about 7.0. (Ex. C.) This created noxious odors that created numerous complaints from workers in the plant. While experimenting to create an on-site PAA generation system, Enviro Tech noticed the unexpected result that increasing the pH both increased antimicrobial efficacy and reduced the noxious odors from the PAA without harming the quality of the poultry carcass.

Enviro Tech has alleged that Zee either (1) directs and controls or (2) induces infringement by *inter alia* installing equipment in its customers' facilities—████████ Redacted ████████ during the periods of alleged infringement—that automates the practice of the patented method claims and by instructing its customers' employees how to use the equipment to carry out such infringing

4

processes. (ECF No. 15 at PageID # 78, ¶ 33.) Zee does not deny that it installs equipment that maintains the claimed pH ranges of PAA-containing water in its customer's' chiller tanks. (Exs. D, E.) This is confirmed by Zee's own ███████ Redacted ███████, showing the ███ Redacted ███ ███████████████████. (ZC0005994 (Ex. F); ZC0005995 (Ex. G).) And Zee's own user manuals indicate that the pH setpoints are entered through a password-protected user interface that appears to only be accessible by Zee employees. (Ex. H at ZC0002842 (showing the "Nutrachill Skid Screen" for setting pH setpoints and noting "[a] Zee level log in is required to access this screen").)

Enviro Tech's discovery requests seek information to which Enviro Tech is entitled under the Federal Rules, which allow discovery of "[a]ny matter that is relevant to a party's claims or defenses." *Brown v. Tellermate Holdings Ltd.*, No. 2:11-cv-1122, 2014 WL 2987051, at *15 (S.D. Ohio July 1, 2014). Zee brought this lawsuit seeking a declaration that its activities do not infringe the '321 patent, and Enviro Tech counterclaimed for infringement. Here, Enviro Tech seeks specific discovery relevant to Zee's infringement. Zee has no basis to resist.

Zee's pattern of behavior demonstrates a failure to fully and fairly comply with its discovery obligations. Upon receipt of written responses to document requests—without an accompanying document production—Enviro Tech acted promptly and identified numerous deficiencies in the responses and potential deficiencies that it anticipated would be present in Zee's belated document production. Enviro Tech's counsel, through numerous letters and meet and confers, attempted to resolve these disputes, but Zee has raised a new objection or excuse each time. Receipt of Zee's first belated document production—28 days after the deadline—showed that Enviro Tech's discovery concerns had been realized. For months, Enviro Tech continued to seek resolution. But Enviro Tech can no longer allow Zee to use the meet and confer process as a

discovery filibuster. The parties are at an impasse on the issues raised herein. Enviro Tech seeks a timely resolution so that it can move the case forward and meet the Court's scheduling order.

## II.     RELEVANT FACTUAL BACKGROUND

### A.     General Overview of the Poultry Chilling Process

A major concern in poultry processing plants is contamination of poultry carcasses with unwanted microorganisms. Poultry processing can cause such contamination. Poultry processors therefore use antimicrobial agents and refrigeration to control microbial growth. Domestically, "submersion in large chilled water baths[, i.e., immersion chilling,] is the allowed and preferred method for the rapid reduction in carcass temperature after evisceration." (Ex. I at 2:44-47.)[1] Federally mandated guidelines require that the poultry carcasses must be rapidly chilled to a temperature below 40° F. (Ex. J at 3:31-35.)[2] To control cross-contamination in these "chiller tanks," specialized chemistries like PAA are added to kill or reduce the amount of unwanted microorganisms. (Ex. I at 2:48-64.)

In large facilities, a continual flow of poultry carcasses is fed into the lead-in section of a large chiller tank. (Ex. J at 3:37-42.) The poultry carcasses are then continually moved through the chiller tank by, e.g., an auger. (*Id.* at 3:43-59.) Such operations typically utilize multiple separate chiller tanks connected in series so that the poultry carcasses are subjected to cleaner and cleaner water. (*Id.* at 3:60-67.) Water carryover on the poultry carcass surface from one tank to another lowers chiller tank water levels, requiring recirculation of "make up water" from downstream tanks. (*Id.* at 4:18-40.) The continuous process runs for several hours. (*Id.* at 4:49-61.)

---

[1] U.S. Patent No. 10,745,338 lists Zee as the applicant and was prosecuted by the law firm Patterson Thuente, the same firm as Zee's litigation counsel in this proceeding.
[2] U.S. Patent No. 9,771,283 lists Zee as the applicant and was also prosecuted by the law firm Patterson Thuente.

6

USDA guidelines require that poultry processing facilities maintain Hazard Analysis and Critical Control Point ("HACCP") plans. These plans provide a systematic, preventative process that relies on the control of physical, chemical, and biological hazards rather than finished product inspection to ensure food safety. (*Id.* at 5:35-45.) Key production steps, known as Critical Control Points ("CCPs"), are monitored to reduce or eliminate the risk of hazards potentially present, including during the chilling process. (*Id.*; Ex. B at ¶ 10.) Examples of CCPs include PAA concentration and pH. (Ex. B at ¶ 10.) Service providers of chemical intervention programs for the chilling processes at poultry processors typically participate in formulating and validating HACCP plans. (*Id.*)

Relevant here is pH control in the chill tanks. Poultry processing facilities have a set pH that they maintain in compliance with their filed HACCP plans and other USDA regulations. (Ex. E ("Zee Company customers can…record PAA and pH data to support required HAACP[sic] documentation.").) As an acid, equilibrium PAA has a pH below 7. However, both the patented method and the accused method use PAA at a basic pH, which requires the addition of an alkaline source to raise the pH of the PAA-containing water. Because the PAA dissociates both as a function of pH (ECF No. 15, ¶ 73) and as part of the antimicrobial process, fresh PAA must be added to maintain effective concentrations. The resulting fluctuations in pH require continuous monitoring by the chemical intervention system to maintain the desired pH of the PAA-containing water in the chill tank.

### B.     Zee Provides Chemical Intervention Programs for Poultry Chilling Processes at Poultry Processor Facilities

Zee provides chemical intervention programs to poultry processing facilities. (ECF No. 15 at PageID # 76, ¶ 18; ECF No. 17 at PageID # 112, ¶ 18.) Zee's revenues are derived from Redacted

████████████████████████████████████████████

**Redacted** . (Ex. K at 30.) In return for a **Redacted** , Zee provides **Redacted** , and, **Redacted** . (*Id.*) Zee's contracts include price quotations detailing **Redacted** **Redacted** (Ex. L at ZC0006110–11.)

### C. Timeline of Zee's Responses to Enviro Tech's Discovery Requests

Enviro Tech served its first sets of Requests for Production of Documents (RFPs) and Requests for Admission (RFAs) on July 7, 2021, and its first set of Interrogatories on July 9, 2021. (Exs. M, N, O.) Zee served its written responses on August 6, 2021, without producing documents, and served supplemental responses to the RFPs on August, 19, 2021. (Exs. P, Q, R, S.) Zee's interrogatory responses have never been verified as required by Rule 33(b). (Ex. N.) For Interrogatory Nos. 1 and 2, Zee relied on Rule 33(d) but did not produce documents or identify any specific documents as containing the requested information at the time it served its written responses. (*Id.*) And for Interrogatory No. 4, Zee stated it would provide any opinion of counsel pursuant to any applicable scheduling order from the Court, *id.*, but there is no such date in the scheduling order (ECF No. 28). Zee's responses to RFPs 5, 8-13, 17-20, 24-26, 28, 33-35, 39, 40, 44-48, 50, 53, and 54 consisted only of objections and did not state if documents were being withheld. (Ex. P.)

Zee did not serve its document production and interrogatory responses within the 30 days required by the Federal Rules. Zee served its first document production 58 days after Enviro Tech served its first document requests. Zee then produced 8 additional documents on September 23 and 4 additional documents on September 28. Zee eventually agreed to supplement Interrogatory Nos. 1 and 2 with Bates numbers on October 6, 2021. Since the outset, Enviro Tech has maintained that such identifications alone do not provide sufficient answers to those interrogatories. (Ex. Y.)

8

Enviro Tech served its second sets of Requests for Production of Documents and Requests for Admission on August 31, 2021. (Exs. T, U.) Zee served its written responses on September 30, 2021, but did not produce documents. (Exs. V, W.) Zee's responses to RFPs 59–61 consisted only of relevance objections. (Ex. W.)

Zee supplemented its responses to Enviro Tech's first set of Interrogatories on October 6, 2021. Ex. X. For Interrogatory Nos. 1 and 2, Zee relied on Rule 33(d) and an identification of documents by Bates number. *Id.* For Interrogatory No. 4, Zee identified an opinion of counsel that has not been produced due to a privilege claim. *Id.*

### D.     Timeline of Attempts to Resolve Discovery Disputes

Despite 13 letters, 12 emails, and 3 formal meet and confers, Zee's responses have done nothing but serve as a filibuster stalling resolution of the discovery disputes addressed in this motion. The following summarizes the most relevant discussions between the parties.

*Requests for Production*

Prior to Zee's belated productions, Enviro Tech focused on whether Zee planned to withhold documents based on its improper objections. (Ex. Y.) After Zee finally identified the requests for which it "refuses to produce documents" (Ex. Z), discussions turned to Zee's bases for withholding documents. To date, Zee has not expressly identified which specific objections it relies on to withhold documents, even failing to do so in its supplemental responses, for RFPs 9, 11, 18, 20, 24, 25, 26, 28, 33, 34, 35, 44, 46, and 47.[3] (Exs. P, Q.)

After receiving Zee's belated first production, Enviro Tech identified numerous deficiencies that appeared to result from withholding of responsive documents. For example, Zee's production lacked any executed contracts (RFPs. 34 and 50), necessitating supplemental

---

[3] In two letters, Enviro Tech noted the Federal Rule's requirement that Zee expressly state whether it was withholding documents and the specific bases therefor. (Exs. Y, AA.)

productions.[4] Zee's production also lacked any email correspondence prior to February 9, 2021, the issuance date of the patent.[5] Further discussions revealed two problematic facts: (1) Zee permitted a single individual, Zee president Jonathan Bullard, to direct its self-collection efforts; and (2) Zee limited its self-directed email search to emails after February 9, 2021 and to only two keywords, "Enviro Tech" and "Envirotech." (Exs. Z, CC, EE.) Enviro Tech then provided a bulleted list of the types of documents that it believed should exist based on its knowledge of industry and regulatory requirements and Zee's first document production. (Ex. DD.) When Zee's counsel admitted during a September 17 meet and confer that he did not know what documents existed, Enviro Tech suggested that Zee's counsel provide the bullet list to its client and use that as a basis to craft further searches. Zee's counsel responded, "I'm not gonna do that."

Later that day, Zee's counsel proposed that Enviro Tech suggest a new cut-off date, but only if it had a "justification for it," and that Enviro Tech suggest search terms in the first instance. (Ex. BB.) When Enviro Tech requested that Zee provide the search terms that Mr. Bullard applied to evaluate whether further searching could resolve the discovery disputes (Ex. FF), it learned that the only terms applied to emails were "Enviro Tech" and "Envirotech." Realizing the fatal deficiencies in Zee's discovery plan, Enviro Tech counter proposed that Zee re-do its document search and collection according to a plan reasonably calculated to identify responsive information. (Ex. GG.) Zee declined. (Ex. HH.) At an October 8, 2021, meet and confer on other issues, Zee's counsel noted that it is still amenable to its September 17 "proposal." Enviro Tech's counsel

---

[4] Zee's counsel affirmatively stated that it had produced executed contracts but later admitted that assertion was incorrect. (Ex. BB.) But even Zee's supplemental production lacked executed contracts for Pilgrim's Pride, as sought by Request for Production No. 50. Only after Enviro Tech pointed out this deficiency, did Zee again supplement its production.

[5] The parties repeatedly discussed the proper time frame for Zee's search. Zee maintains that only documents after the patent issued are relevant. (Ex. Z, BB.) Enviro Tech has responded multiple times listing reasons why discovery before patent issuance is relevant. (Ex. AA, CC, DD.)

explained that Zee's "proposal" (1) was not a proper way to resolve the current disputes and, even if it were, (2) it would only result in further prolonged disputes about Enviro Tech's suggested date cut-off and search terms.

*Interrogatories*

Months prior to Zee's October 6 supplementation, Enviro Tech explained why Zee's reliance on Rule 33(d) was improper for Interrogatory Nos. 1 and 2. Zee's supplementation, 89 days after Enviro Tech served its interrogatories, nevertheless only cited Bates numbers. As anticipated, Zee's citations do not permit Enviro Tech to derive full and complete answers. (Exs. Y, KK.) The cited documents rely on large numbers of CAD files, schematics, documents related to potential rather than executed bids, and chemical Safety Data Sheets to "[i]dentify… Zee Company products, services, or chemical intervention programs that use or include the use of peracetic acid-containing water in a chill tank or other reservoir at a pH between about 7.6 and about 10" and "[f]or each product, service, or chemical intervention program identified in Interrogatory No. 1, identify the facility at which the product, service, or chemical intervention program has been installed." (Exs. N, II, JJ.)

Furthermore, none of Zee's interrogatory responses have been authenticated. Enviro Tech twice noted the Rule 33(b) verification requirement in its August 17 and 23 letters. (Exs. Y, KK.) Zee committed to "have the interrogatory responses verified by Zee Company once [Zee] supplement[s] them." (Ex. LL.) That did not occur. (Ex. X.)

*Requests for Admission*

From the beginning, Enviro Tech identified deficiencies in numerous responses to RFAs, because they failed to explain any denial or statement that Zee could neither admit nor deny the

request.[6] (Ex. Y.) Zee simply responded that "Zee stands by its objections and responses to the requests for admission." (Ex. MM.) Despite the impasse, Enviro Tech offered to discuss further in its August 23 letter. (Ex. KK.) Zee responded by simply reiterating its objections and ignored any statement about the impasse. (Ex. LL.) Enviro Tech noted as much in its September 10 letter and again offered to attempt to resolve any issues in a meet and confer. (Ex. AA.) Zee then responded in its September 14 letter, that Zee had "written to you about this before, numerous times I believe. See my prior correspondence." (Ex. Z.)

## III.   ARGUMENT

Zee's discovery efforts do not meet the expectations of the Court and the Federal Rules that trial attorneys "formulate a plan of action which will ensure full and fair compliance with [an opposing party's] request." *Brown*, 2014 WL 2987051, at *18. From the beginning, Zee's discovery plan lacked sufficient steps to ensure collection of responsive documents within its knowledge. *Id.* When Enviro Tech raised these concerns, Zee's counsel refused to follow up with his client. Zee's own admissions demonstrate these failures.

### A.   Zee's Document Production Is Deficient

Zee failed to perform a document search and collection crafted to ensure full and fair compliance with Enviro Tech's requests by (1) failing to thoroughly search for responsive documents and communications, (2) failing to have counsel sufficiently involved in the collection process, and (3) refusing to cooperate with Enviro Tech's reasonable requests to supplement the

---

[6] The responses did not explain what bases were being relied on for the denials. (Ex. S.) Zee objected to RFAs 30, 31, 36, 37, 38, 42, and 43 because it was unable to define the term "operate." (*Id.*) Zee objected to RFAs 19, 20, 21, 22, 23, and 24 as argumentative or assuming facts without identifying what facts were assumed or what was considered argumentative. (*Id.*) Zee objected to RFAs 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, and 36 because the information was in the possession of another. (*Id.*)

production. Taken together, these failures created an untrustworthy discovery plan that should be revised to be reasonably calculated to identify and provide responsive information.

*First*, Zee's email search consisted solely of applying the terms "Enviro Tech" or "Envirotech" to emails dated February 9, 2021—the date the '321 patent issued—to present. That plan fails to ensure full and fair compliance with Enviro Tech's document requests, because it does not "include steps to ensure that all documents within [the client's] knowledge are retrieved." *Brown*, 2014 WL 2987051; *Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125, 126 (S.D.N.Y. 2015) ("As with keywords or any other technological solution to ediscovery, counsel must design an appropriate process, including use of available technology, with appropriate quality control testing, to review and produce relevant ESI…." (quoting *Da Silva Moore v. Publicis Groupe & MSL Grp.*, 287 F.R.D. 182, 193 (S.D.N.Y. 2012)). Zee's "proposal" to resolve this dispute was that Enviro Tech suggest the search terms that should be applied, determine what date limitations should be placed on that search, and justify why such date limitations are correct. (Ex. BB.) In effect, Zee asked Enviro Tech to construct a document collection plan that Zee was obligated to craft in the first instance. *Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 377 (S.D. Ind. 2009) ("Novelty also requested that Mountain View propose electronic search terms for Novelty's email server, thus obviously attempting to shift responsibility for ensuring the completeness of Novelty's production to Mountain View. [Dkt. 167-17 at 2.] Mountain View declined Novelty's invitation, properly so…."). Even if it undertook such an endeavor, Enviro Tech does not have enough information about Zee's internal operations to craft the necessary search. *Id.* at 377 n.9 ("Novelty, the possessor of its documents, is better positioned to determine the content of its own documents.") Moreover, Zee's production is so deficient that Enviro Tech would be unable to supplement a list of searches from Zee, much less craft Zee's document search from the ground

up. The meet and confer process is not a negotiation in which one party can force the other to give up discovery the requesting party is entitled to. Enviro Tech should not end up with less discovery than that to which it is entitled because Zee did not properly plan and execute its search.

When recrafting its new search, Zee should search for emails and documents from before the patent issued, because Zee has no justifiable objection for not doing so. Such documents are relevant for several reasons.[7] One, based on the ██████████, Zee implemented chemical intervention programs at the facilities of all the customers at issue ████████████████. Those processes and any changes thereto—or lack of changes thereto—are relevant to infringement. Two, the last arguably substantive amendment to the claims that issued as claims 1–28 occurred on November 11, 2017.[8] Thus, documents and communications related to interpretations or actions taken based on the pending claims 1–28 are relevant to infringement. Three, Zee itself appended a notice letter received by one of its customers on August 11, 2016, indicating that Zee believes such time frames to be relevant and likely discussed pH issues with its customers prior to February 2, 2021. (ECF No. 1-2.).[9]

*Second*, it appears that Zee's counsel has not sufficiently participated in its client's self-collection efforts. Zee's counsel admitted that Zee's president, Mr. Jonathon Bullard, "directed the

---

[7] Upon Zee's request (Ex. OO), Enviro Tech repeatedly identified these reasons (Ex. CC), but Zee ignored those explanations (*compare* Ex. AA (explaining such reasons), *with* Ex. Z (asking Enviro Tech to "please explain why" such "emails are relevant before [the patent issuance] date")). Even during the October 8 meet and confer, Zee again asked Enviro Tech to justify a search from before the patent issuance.

[8] The only other amendment on June 19, 2019, amended the preamble of the claims that issued as independent claims 1, 10, 19, and 24 to recite "[a] method of treating at least a portion of a poultry carcass with peracetic acid, said method comprising the steps of."

[9] Any order to recraft the search should further require inclusion of drafts of all documents. After extensive debate, including multiple statements that no drafts whatsoever exist at Zee, counsel finally offered to allow such documents to be produced if they were captured in the search. (Ex. BB; *see also* Exs. Z, AA, CC, DD.)

document collection at his company and sent [the documents] to either the lawyers or the e-discovery vendor" *and* repeatedly asserted that they do not know what responsive documents exist. (Ex. CC.) *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 936 (N.D. Ill. 2021) (noting that "counsel could not legitimately claim that they made every effort to provide all relevant information when they had undertaken no independent action to verify the completeness of what [the client] found. Clients may fail to find or provide all responsive information for the additional reason of self-interest"). Zee's stance conflicts with Zee's obligation "[i]n responding to discovery requests . . . to examine critically the information that a client provides about the existence and availability of the requested documents." *DiLuzio v. Village of Yorkville, Ohio*, No. 2:11-cv-1102, 2016 WL 7406535, at *34 (S.D. Ohio Dec. 22, 2016). Zee's counsel's lack of knowledge about what documents exist indicates that they did not sufficiently examine the information received from Zee.

When Enviro Tech identified this deficiency, counsel took no further action to remedy it. Rather than determine whether the identified documents existed, counsel asserted that questions regarding the existence of documents were not appropriate for discussion during meet and confers and would only be answered during a 30(b)(6) deposition. (Ex. CC.) That does not comply with counsel's duty to cooperate in the discovery process, to be transparent about what information exists, how it is maintained, and whether and how it can be retrieved. *Brown*, 2014 WL 2987051 at *2; *Procaps S.A. v. Patheon Inc.*, No. 12-24356, 2014 WL 800468, at *2 (S.D. Fla Feb. 28, 2014) (awarding attorneys' fees and ordering a comprehensive forensic search where counsel left the collection of relevant documents to the client, who looked for responsive documents using a single search term). It also suggests that Zee's proposals for additional searches lack any guarantee of proper execution. *Id.* at *23 ("Parties cannot be permitted to jeopardize the integrity of the

discovery process by engaging in halfhearted and ineffective efforts to identify and produce relevant documents.").[10]

Any cooperation by Zee has been half-hearted. Zee's eventual production of the executed contracts between itself and Pilgrim's and Claxton are exemplary. Any person, much less an experienced patent attorney, would expect executed contracts between Zee and its customers to have been in the document collection, not only as a matter of common sense, but because they were specifically requested in RFPs 34 and 50. But when Enviro Tech noted the omission of these agreements, counsel asserted they had been produced (Ex. Z) only to later admit the agreements had not been produced and would need to be gathered from Zee (Ex. BB). Then, even with an explicit reminder from Enviro Tech, Zee still did not produce the executed contracts from the two clients Enviro Tech had at that time been able to identify (Pilgrim's and Claxton). (*See* Ex. DD.) Without any explanation, Zee finally produced those executed agreements,[11] and agreements with other previously unidentified customers, on September 28, 2021. This evidences counsel's failure to critically examine the documents they receive from their client.

*Third*, Zee has refused to aid Enviro Tech in its investigation of why certain documents Enviro Tech believes must exist were not included in Zee's production. Enviro Tech provided Zee with a bullet list of types of responsive documents that should exist but were not included in Zee's production. (Exs. DD, GG, PP (tying the bulleted list to specific RFPs).) This list included documents (1) that Enviro Tech knows must exist for a service provider like Zee to provided chemical intervention services to its customers and (2) that should exist based on the few

---

[10] Enviro Tech also asks the Court to order Zee to maintain the original metadata of any collected documents as they were originally stored. Zee's production, for example, only indicated one email custodian, Jonathan Bullard, despite emails being present from other individuals.

[11] Enviro Tech, however, is still unable to confirm that the Pilgrim's contract is for the facility in Chattanooga identified in Enviro Tech's counterclaims.

16

documents Zee has produced thus far. When Enviro Tech requested that Zee's counsel provide this list to its client, Zee's counsel responded, "I'm not gonna do that." This does not comply with Zee's "duty (perhaps even a heightened duty [when producing ESI]) to cooperate in the discovery process."[12] *Brown*, 2014 WL 2987051 at *2.

The documents Enviro Tech has asked Zee to investigate are basic documents that any service provide must have or that are indicated to exist in Zee's own production. Enviro Tech's bulleted lists of types of responsive documents include: bid documents submitted to current customers; complete current customer contracts; all pitch decks for current customers; anything related to ESI stored in Zee's server, which includes historical data for pH and may identify which individuals program those setpoints; any email correspondence with any poultry processor for which it provides a chemical intervention program that is the subject of this litigation.[13] (Exs. DD, GG, PP (sorting the previous bulleted list by specific RFPs).) These types of documents are responsive to at least RFPs 6, 14, 16-23, 29, 30, 33-37, 46, 47, 49-54. (Ex. PP (identifying the preceding RFPs).) And these are only the documents that Enviro Tech can assume exist. Enviro Tech has no way to know what other documents may exist or may have been withheld because numerous responses to the RFPs, as discussed below, do not comply with Rule 34.

Zee has also violated Rule 34 on two occasions by failing to timely produce documents responsive to Enviro Tech's second set of RFPs. Zee produced some documents responsive to Enviro Tech's first RFPs on September 3, 2021 (28 days after the deadline) and executed contracts

---

[12] This, along with the absence of documents, supports the inference that Zee's counsel has not reviewed documents received from the client "to see whether they indicate the existence of documents not retrieved or the existence of other individuals who might have documents, and there should be appropriate follow up." *Id.* at *18.

[13] Out of only 357 emails, Zee produced 42 from the Association of Water Technologies, 19 from Law360, and twelve 12 from Connected Community, but only 5 emails involving Claxton Poultry, and 2 emails involving Pilgrim's Pride.

that Enviro Tech identified as missing on September 23 and September 28. Zee has yet to produce documents responsive to Enviro Tech's second RFPs, which were due September 30. Rule 34 requires production of responsive documents within thirty (30) days absent agreement otherwise. *See, e.g.*, *DR Distribs.*, 513 F. Supp. 3d at 939; *Novelty, Inc. v. Moutain View Mktg., Inc.*, 265 F.R.D. 370, 376 (S.D. Ind. 2009). Zee has no valid excuse for its dilatory tactics.

## B. Zee's Response to the Requests for Production of Documents Do Not Comply with Rule 34's Requirements

The failure of Zee's written RFP responses to comply with Rule 34 compounds the problems with Zee's production, preventing Enviro Tech from fully evaluating what has been produced, what does not exist, and what has been withheld. Few of Zee's written responses identify any specific basis for which documents are being withheld, instead relying on multiple "general and specific objections." For the few responses to which Zee has chosen to specifically explain its reasoning for withholding documents, the explanations are non-sensical.

From the beginning, Enviro Tech emphasized that Zee has not sufficiently explained whether documents are being produced, do not exist, or are being withheld. (Ex. Y.) A few responses have been updated but many, particularly responses to RFPs 18, 24, 25, 28, 35, and 44, remain deficient. And on August 19, Zee served its responses to Enviro Tech's Second Set of Requests for Production of Documents, in which the responses to RFPs 59, 60, and 61 continue the same deficiency.[14] (Ex. W.) In an illusory attempt to resolve this conflict, Zee's September 14 letter states "if Zee Company objects and does not state that it is producing documents subject to

---

[14] At the October 8 meet and confer, Zee's counsel stated that the parties were not an impasse for RFPs 59, 60, and 61. However, in that same conversation, they stated that Zee had not specifically looked for responsive documents, so it would need to perform a search to see if any exist. It is unclear how counsel could know that such documents are irrelevant without reviewing them. For example, regarding RFPs 59 and 61, Zee's own document states that "Zee Company customers can…record PAA and pH data to support required HAACP[sic] documentation." (Ex. E.) Mr. Donabed confirmed that such documents would be relevant. (Ex. B at ¶¶ 8–10.)

any objection(s), then it is not producing documents." Not only is such a blanket statement directed to unidentified RFPs improper, but it does not identify the bases for withholding such documents. Do responsive documents exist? If so, why did Zee choose to withhold them?

One example of the problems resulting from these deficiencies regards RFP 12, requesting "All documents relating to the Patent-in-Suit or any Related Patent, including all documents that reference or discuss the Patent-in-Suit or any Related Patent." Zee responded that "Zee Company incorporates its general objections. Zee Company further objects to this request on the grounds that it does not identify with reasonable particularity documents requested as required by Rule 34." Enviro Tech noted that Zee was required to state whether documents would be produced or withheld and that it must particularly explain what aspects it believes are unclear. (Ex. Y.) But it was not until Zee's September 14 letter, after three letters debating the issue, that Zee stated that a number of RFPs were "objectionable on their face" and that RFP 12 was problematic because of the phrase "related to" because "[a]rguably, any document produced in this case 'relates to' the patent-in-suit because it has been produced in this lawsuit." (Ex. Z.) Enviro Tech incurred substantial expense to extract even this meager response. Even if Zee were correct—it is not—Zee is obligated to produce at least the responsive documents identified during a reasonable search.[15] Zee's pattern of obstructive behavior has caused Enviro Tech to expend significant resources unsuccessfully attempting to get the documents to which it is entitled.

Zee has also improperly relied on objections to the relevance of documents to limit its production without any explanation for what specific documents have been withheld. Enviro Tech's September 10 letter explained that relevance objections do not allow Zee to "unilaterally

---

[15] For example, Zee has produced two public documents discussing Enviro Tech's patent and Zee's purported noninfringement but no documents related to the drafting or transmittal of such documents aside from a single email. (Exs. D, E.)

decide what it considers relevant" and withhold documents simply on this basis. Enviro Tech explained this for the definition of the term "chill tank" and for RFPs 18, 29, and 30. (Ex. AA.) But rather than address these arguments, Zee responded that such a challenge "is not a legitimate complaint." (Ex. Z.) And, ignoring Enviro Tech's argument in the preceding letter, Zee stated that "[i]f Enviro Tech has concerns about the objection to any document request, let me know and Zee will consider such concern." (*Id.*) In the same letter, Zee simply stated that RFP 28 is irrelevant.[16] The only explanation provided was that "[a]n infringement analysis involves two steps, namely, construction of the claims (by the court), and a comparison of the construed claims to be accused product (by the factfinder)." (*Id.*) There was no explanation for why deciding to develop the Accused Products is not relevant to infringement. Nor was there any explanation for why such documents would not be relevant for any of the other issues in the case, such as damages and willfulness. Zee simply "refuses to produce documents," even though they are at least relevant to willfulness. (Exs. Z, CC.)

The Court should order Zee to supplement its RFP responses to comply with Rule 34.

## C. Zee's Reliance on Rule 33(d) to Respond to Certain Interrogatories Is Improper

Zee's reliance on Rule 33(d) to respond to Interrogatory Nos. 1 and 2 is improper. These interrogatories request relatively straightforward identifications of certain information, which could be answered by simply listing the information sought. Instead, Zee responds with business records. But "Rule 33(d) applies only in those instances in which the information sought may be obtained by examination of the opposing party's business records, *and* the burden of obtaining such responsive information is substantially the same for either party." *Beijing Fito Medical Co.,*

---

[16] Zee's September 14 letter was the first time it had specifically identified any documents would be withheld based on relevance objections.

*Ltd. v. Wright Med. Tech., Inc.*, No. 15-cv-02258, 2016 WL 10518448, at *4 (W.D. Tenn. July 1, 2016) (emphasis added). Here, Enviro Tech has no way of determining much of the requested information for the documents. For example, Enviro Tech cannot identify "the individuals responsible for [the] design, development, marketing, manufacture, testing, and/or sales" of Zee's products, services, or chemical intervention programs that use a pH of about 7.6 to about 10.0 as requested in Interrogatory No. 1. Nor can Enviro Tech determine "the facility at which the product, service, or chemical intervention program has been installed" as requested in Interrogatory No. 2. The documents identified in Zee's response primarily address potential bids for Zee to provide a chemical intervention program or Safety Data Sheets.[17] (Ex. JJ.) Such documents do not indicate what facilities had any of the Accused Products installed. This violates Rule 33(d).

Zee has also failed to sign its answers to interrogatories, despite repeated reminders from Enviro Tech and Zee's own commitment to sign. Exs. Y, KK, LL. This is a violation of Rule 33(b)(5). *State Farm Mut. Ins. Co. v. Pointe Physical Therapy, LLC*, No. 14-11700, 2017 WL 11379855, at *2 (E.D. Mich. Dec. 15, 2017). It should also leave the Court skeptical as to the completeness of Zee's interrogatory responses. *Id.* Zee cannot simply ignore the scope of the request and should provide specific, complete, and signed responses. *Id.*

### D. Zee's Responses to Requests for Admission Do Not Comply with Rule 36's Requirement that a Denial Must Fairly Respond to the Substance of the Matter

Zee's responses to Enviro Tech's RFAs are not a good faith attempt to fairly respond to the substance of the matter because Zee improperly relies on its inability to admit or deny a request or qualified its admissions in a way that its responses are devoid of substance. This frustrates the purpose of RFAs by failing to provide any substantive response.

---

[17] There are also a list of documents titled " ███████ Redacted ███████ " but these are spreadsheets provided by ███████ Redacted ███████ .

Zee was required to "specifically deny" or "state in detail why the answering party cannot truthfully admit or deny" the request. (Ex. Y (quoting FRCP 36(a)(4)).) Such information helps the parties to narrow the issues of the litigation or engage in a meaningful meet and confer. RFAs 9, 16, 19, 25, 26, 31-38, 40-45 do not comply with Rule 36(a)(4). (Exs. S, GG.) For example, when asked to admit that Zee has "provided to one or more of its customers in the United States the product displayed at the following [Youtube] webpage," Zee claims it cannot answer because the term "provided" is undefined and it "calls for a purely legal conclusion." (Ex. V at RFA 41; *see also* Ex. V at RFAs 40, 42 (providing similar responses to requests about Zee's publicly advertised products).) For RFAs 9-14, 16-18, 25, 26, 27, 28, 29-35, 46, 47, Zee claims that "due to the vagueness of this request, Zee Company cannot admit or deny this request and thus denies the same." (Exs. S, GG.) The vague terms that Zee objects as undefined are "chemical intervention programs" and "the components thereof," terms which Zee itself uses in its own contracts, and "chill tank," a term Zee uses repeatedly in its own patents. (Exs. L at ZC0006110–11, Y, KK.) For RFAs 17, 18, 46, and 48, Zee objects to phrases such as "operate" and "how to use" as too vague for Zee to respond. (Exs. S, GG.)

Even when Zee admits an RFA, its qualifications render the admission unintelligible. For example, RFAs 45-48 are admitted to the extent "customers receive certain information" about the product. But these RFAs asked whether "Zee Company provides its customers with instructions for how to use" those products. (Exs. S, GG.) Zee's responses are evasive and unresponsive.

Such responses fail to provide any meaningful opportunity for the parties to work together to narrow the issues for trial, particularly when Zee will not admit even the most basic of facts— such as that it provides publicly advertised products to its customers or instructions on how to use

those products. Based on this pattern of behavior, the Court should order Zee's to supplement its responses to RFAs 9, 16, 19, 25, 26, 31-38, 40-48 with answers that comply with Rule 36(a)(4).

## IV.    CERTIFICATION OF MEET AND CONFER

As detailed above, the parties have participated in several meet and confers. Defendants were represented by Seth Ogden. Plaintiffs were represented by Jeffer Ali and, on some occasions, additional counsel. Plaintiffs' failure to meaningfully participate in discovery or to advance this case to resolution necessitated this Motion to Compel.

## V.    CONCLUSION AND RELIEF SOUGHT

Zee should perform another search of all electronically stored information, including emails, using a list of search terms reasonably calculated to identify responsive documents. Zee should propose search terms in the first instance. Enviro Tech should then be allowed to suggest any additional search terms, with Zee obligated to negotiate such additions in good faith to avoid any need for further motions practice. Zee's search should encompass the period from August 11, 2016, to present, unless Zee is aware of discussions or actions taken in response to the pending application that issued as the '321 patent prior to the August 11, 2016, date. Zee should supplement its responses to Interrogatory Nos. 1 and 2 to provide substantive answers rather than rely on produced documents. Zee should further verify the interrogatory responses as required by Rule 33(b). Zee should further supplement its responses to Enviro Tech's RFPs to specifically identify what documents have been produced, do not exist, or withheld, and to provide a specific basis for withholding any documents. Zee's RFP responses to be supplemented are RFPs 12, 14, 16-25, 28-30, 33-37, 44, 46, 47, 49-54, 59-61. And Zee should supplement its responses to Enviro Tech's RFAs to fairly respond to the substance of the matter or risk the RFAs being deemed admitted. Zee's RFA responses to be supplemented are RFAs 9, 16, 19, 25, 26, 31-38, 40-48. Zee should provide a declaration of what attempts were made to locate responsive documents, which

custodians' records were searched, including email accounts, and how the custodians were selected and identify which documents are responsive to which requests. *See, e.g.*, *State Farm*, 2017 WL 11379855 at *4 (requiring same).

Zee and its attorneys should also be sanctioned for their failure to cooperate in discovery and for their violations of the Federal Rules of Civil Procedure. Enviro Tech is entitled to at least its reasonable expenses in making this Motion under Rule 37(5)(A), including attorneys' fees, and/or under Rule 26(g)(3).


Date: October 12, 2021                    Respectfully submitted,


                                          By:____/s/ Seth Ogden_____
                                          Seth R. Ogden (BPR No. 034377)
                                          Ryan D. Levy (BPR No. 024568)
                                          PATTERSON INTELLECTUAL PROPERTY
                                          LAW, P.C.
                                          Roundabout Plaza, Suite 500
                                          1600 Division Street
                                          Nashville, TN 37203
                                          (615) 242-2400
                                          (615) 242-2221
                                          sro@iplawgroup.com
                                          rdl@iplawgroup.com

                                          *Attorneys for Defendant/Counterclaimant*
                                          *Enviro Tech Chemical Services, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true copy of the foregoing document has been served via CM/ECF

on October 12, 2021, to:

J. Scott McDearman
GRANT, KONVALINKA & HARRISON, P.C.
633 Chestnut Street, Suite 900
Chattanooga, TN 37450-0900
(423) 756-8400
(423) 756-6518 (fax)
E-mail: SMcDearman@gkhpc.com

Jeffer Ali
PATTERSON THUENTE PEDERSEN, P.A.
4800 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 349-3004
(612) 349-9266 (fax)
E-mail: ali@ptslaw.com

/s/ Seth R. Ogden
Seth R. Ogden