# Exhibit GG
## 2021.09.24 ET Letter



September 24, 2021

Jeffer Ali
Adam E. Szymanski
Patterson Thuente Pedersen, P.A.
4800 IDS Center
80 S. 8th Street
Minneapolis, MN 55402-2100
Phone: 612-349-3004
Fax: 612-349-9266
ali@ptslaw.com
szymanski@ptslaw.com

J. Scott McDearman
Grant Konvalinka & Harrison, P.C.
Republic Centre, Ninth Floor
633 Chestnut Street
Chattanooga, TN 37450
Phone: 615-756-8400
Fax: 423-756-6518
smcdearman@gkhpc.com

**RE:** Zee Company's Production of Documents and Email of September 17, 2021
*Zeco v. Enviro Tech*, Case No. 21-cv-79 (E.D. Tenn.)

Counsel:

Thank you for your email of September 17, 2021. We also thank you for producing some executed contracts and the organizational chart that you generated and for your agreement to supplement interrogatory responses by October 6, 2021.

We have considered your proposal thoroughly and do not believe that it is workable because, as we have come to learn through our correspondence, meet and confers, and review of Zee's production, Zee never executed a discovery plan reasonably calculated to gather the information requested by Enviro Tech. The purpose of meet and confers are to resolve disputes; they are not negotiations requiring a party to give in to demands to forego discovery to which that party is entitled. Zee has continually delayed providing discovery responses while at the same time attempting to negotiate concessions—concessions which would merely nullify Zee's responsibility for its unjustified failures in complying with its discovery obligations. We would like to point you to a case from the Southern District of Ohio, a sister court within the Sixth Circuit, that eloquently sets forth our position as to a party's obligations under the Federal Rules regarding discovery—*Brown v. Tellermate Holdings Ltd.*, No. 2:11-cv-1122, 2014 WL 2987051 (S.D. Ohio July 1, 2014). We have reproduced relevant portions in the block quotes below:

> All litigants, and all experienced counsel, understand that the Federal Rules of Civil Procedure authorize broad discovery. *See, e.g., United States v. Leggett & Platt,*

> *Inc.*, 542 F.2d 655, 657 (6th Cir.1976). Any matter that is relevant to a party's claims or defenses—relevant in the sense that it reasonably may lead to the discovery of admissible evidence, and is not privileged—is subject to discovery. The concept of relevance during discovery is necessarily broader than at trial, *Mellon v. Cooper–Jarrett, Inc.*, 424 F.2d 499, 500–501 (6th Cir.1970), and "[a] court is not permitted to preclude the discovery of arguably relevant information solely because, if the information were introduced at trial, it would be 'speculative' at best." *Coleman v. American Red Cross*, 23 F.3d 1091, 1097 (6th Cir.1994).

*Id.* at *15.

> Counsel still have a duty (perhaps even a heightened duty) to cooperate in the discovery process; to be transparent about what information exists, how it is maintained, and whether and how it can be retrieved; and, above all, to exercise sufficient diligence (even when venturing into unfamiliar territory like ESI) to ensure that all representations made to opposing parties and to the Court are truthful and are based upon a reasonable investigation of the facts. As another Judge of this Court has observed, "trial counsel must exercise some degree of oversight to ensure that their client's employees are acting competently, diligently and ethically in order to fulfill their responsibility to the Court," *Bratka v. Anheuser–Busch Co.*, 164 F.R.D. 448, 461 (S.D.Ohio 1995) (Graham, J.).

*Id.* at *2.

> The Court expects that any trial attorney appearing as counsel of record in this Court who receives a request for production of documents in a case such as this will formulate a plan of action which will ensure full and fair compliance with the request. Such a plan would include communicating with the client to identify the persons having responsibility for the matters which are the subject of the discovery request and all employees likely to have been the authors, recipients or custodians of documents falling within the request. The plan should ensure that all such individuals are contacted and interviewed regarding their knowledge of the existence of any documents covered by the discovery request, and should include steps to ensure that all documents within their knowledge are retrieved. All documents received from the client should be reviewed by counsel to see whether they indicate the existence of other documents not retrieved or the existence of other individuals who might have documents, and there should be appropriate follow up. Of course, the details of an appropriate document search will vary, depending upon the circumstances of the particular case, but in the abstract the Court believes these basic procedures should be employed by any careful and conscientious lawyer in every case.

*Id.* at *18.

> As Judge Graham noted, "[i]f litigants are to have any faith in the discovery process, they must know that parties cannot fail to produce highly relevant documents within their possession with impunity. Parties cannot be permitted to jeopardize the integrity of the discovery process by engaging in halfhearted and ineffective efforts to identify and produce relevant documents." Id.

*Id.* at *23.

Here, based on the parties' written correspondence and several meet and confers, Enviro Tech does not believe that Zee has met these basic discovery requirements. *First*, as Zee admits, for all email communications, Zee unilaterally chose to search only for communications dated after February 9, 2021, and only applied the following search terms: "Enviro Tech" and "Envirotech." That search was not reasonably calculated to identify information responsive to Enviro Tech's requests, even if the requests for which Zee has refused to produce documents are not considered.

*Second*, as admitted during our most recent meet and confer, you, as counsel for Zee, do not know what documents exist. Rather, your client's President, Jonathon Bullard, "directed the document collection at his company and sent them [the documents] to either the lawyers or the e-discovery vendor." That statement indicates that you have not complied with your obligation to formulate a plan of action which will ensure full and fair compliance with the request, including communicating with the client, contacting all relevant individuals, and reviewing received documents to see whether they indicate the existence of other documents not retrieved or the existence of other individuals who might have documents. When asked about the existence of documents, you repeatedly stated that you did not know whether certain types of documents existed and that was not a question for you but rather a question to be asked of Zee during a 30(b)(6) deposition. That does not comply with your duty to be transparent about what information exists, how it is maintained, and whether and how it can be retrieved.

*Third,* despite these failures, Enviro Tech attempted to assist in formulating a reasonable discovery plan, but Zee refused. Our last letter provided a lengthy bullet list of specific types of responsive documents that Enviro Tech believes should exist based on its knowledge of the industry and documents produced by Zee. It is Zee's failures in the document collection that appear to be the root cause of the existence of the numerous deficiencies we have previously identified, including but not limited to the bullet list we provided. Yet, when we proposed that you present this list to your client to assist in performing a reasonable search, you stated, "I'm not gonna do that." That bullet list is reproduced here with additional sub bullets added based on your recent production of some, but not all, of Zee's executed contracts with customers.

- Official statements and drafts of those statements regarding why the Zee process does not infringe.

- - We again reiterate that any such document that was sent to a customer is not privileged, even if the document was prepared and/or signed by an attorney.
- Any communications with customers or potential customers regarding why the Zee process does not infringe. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ To the extent any official opinion was provided, e.g., from Zee's attorneys, sharing such documents with a third party defeats any attorney-client privilege claim.
- Executed agreements with customers, such as but not limited to Pilgrim's Pride and Claxton Poultry, regarding the services, chemicals, and equipment that were provided as part of the chemical intervention program.
  - All communications and draft agreements created during the negotiation of the contract. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
  - Such production should include all facilities, including the omitted Pilgrim's Pride Chattanooga facility and Claxton Poultry.
  - Such production should also include all exhibits, attachments, and any other associated documents with the agreement. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
  - Some produced agreements are not even fully executed. It is untenable that Zee does not keep a record of the fully executed contracts with its customers, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
- Any bid material submitted to any customer or potential customers, such as Pilgrim's Pride or Claxton, regarding any attempt to offer Zee's chemical program to that customer or potential customer. ▓▓▓▓▓▓▓▓▓▓▓▓ he similar materials for the chemical intervention programs are clearly more relevant to the present litigation.
  - Any other sales materials and related communications.
  - ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
- Communications planning and coordinating the installation process for Zee's chemical intervention program.
  - Associated purchase orders or other order forms.
  - Communications with any contractors that may have assisted with the installation of any accused product.

Jeffer Ali
September 24, 2021
Page 5

- Any material or communications regarding training customers and their employees regarding the chemical intervention program.
- Documents regarding Zee's document retention policy.
- Draft versions of any responsive documents. Final and draft versions of any HACCP plans related to the chemical intervention program.
  - Any and all drafts of the executed agreements. As previously stated, [redacted]
- Documents regarding the chemical intervention program and the steps suggested, required, or performed by Zee or performed automatically by the PCC or any other hardware associated with the chemical intervention program.
  - Documents identifying the list of users who have access to the PCC system. [redacted]
  - Documents showing the levels of access to the PCC for different users and what actions/permissions were granted to those users, [redacted]
  - Documents associated with the phone application that connects to the PCC.
  - Any documents setting forth or otherwise relating to suggested and/or required production process parameters and other general recommendations intended to assist any of Zee's customers in achieving the customer's microbiological goals [redacted]
- Data logs regarding the operation of the chemical intervention program, particularly to the extent they include pH data.
  - Data logs of the pH setpoints in accused products in effect as of February, 9, 2021, until present and the username used to set the setpoints.
- Any non-compliance reports from FSIS, any other government agency, or any customer related to the chemical intervention program, particularly to the extent the non-compliance report includes pH data.
  - Any internal communications regarding such non-compliance reports.
  - Any submitted corrective actions (accepted or rejected) and any drafts of those submissions.
- We have only found a few emails directly communicating with [redacted] There should be extensive email conversations with each customer regarding the chemical intervention program.
  - [redacted]
- Documents and communications regarding approvals for the chemical intervention program from USDA.
- Any documents or communications related to the Pilgrim's employees identified in the R.26(a) initial disclosures.

- Any documentation on the development of the chemical intervention program, such as lab notebooks, lab studies, evaluations of the programs used by others, etc.
    - May also include communications from customers requesting specific features.
    - 
    -
    -
- Any documentation on the development and validation of the chemical intervention program to operate at an elevated pH, such as lab notebooks, lab studies, evaluations of the programs used by others, etc.
    - May also include communications from customers requesting Zee to provide the elevated pH.
    - Any documents related validation studies conducted for a customer's HACCP plan with regard to the accused products.
- Any documents, official statements, or other communications sent to customers or potential customers regarding Zee's non-infringement, interpretation of, or other opinion regarding the patent application as a whole or its claims before the patent issuance.

The deficiencies in Zee's current responses preclude Enviro Tech from being able to identify an exhaustive list; these are only exemplary. Zee is in a better position than Enviro Tech to know what types of documents exist. It is your obligation as counsel to discuss such issues with your client and formulate a reasonable plan to search for and collect such documents.

At this point, we believe the only way to resolve the outstanding issues is essentially for a "re-do." Zee's resolution of the root cause of these deficiencies will allow the parties to meaningfully address any discrete issues that might remain, such as those identified in Enviro Tech's prior correspondence. Zee should formulate a specific plan that is reasonably targeted to collect existing responsive documents, which is what should have happened in the first place. We are willing to consider further the date cut-off for the searches to assist in developing this plan, but without a full suite of customer contracts for antimicrobial intervention programs, we cannot agree to such a date (your latest production does not even include contracts regarding the Pilgrim's Pride facility in Chattanooga or contracts with Claxton Farms and, as such, is incomplete). Regardless, we are not willing to accept February 9, 2021, as the date cut-off, as we have extensively explained previously. We are also happy to suggest search terms, but we cannot agree that such suggested terms would be the only terms necessary for a reasonable search. As we previously explained, this is because Zee is in a better position to understand naming conventions and other vernacular used internally that refers to responsive documents. We want to make clear that we are not asking Zee to, as you have stated, "fashion searches based merely on Enviro Tech's arguments or complaints." We are asking Zee to fashion searches that "ensure full and fair compliance with [Enviro Tech's] requests. *Id.* at *18.

We also note that Zee's documents clearly indicate that

██████ The information ██████████████ is highly relevant to the infringement analysis, including ██████████ This information is also encompassed by the definition of "documents" as contemplated by the Federal Rules and set out in Enviro Tech's discovery requests. As indicated in *Brown v. Tellermate*, Enviro Tech is entitled to such information in a usable form. ████████████████████████████████████████████████

We are now months past the deadline set in the Federal Rules for Zee to fulfill its discovery obligations. Therefore, the only appropriate resolution that we can envision is for Zee to formulate a discovery plan that involves an additional collection reasonably calculated to collect responsive documents. Once Zee confirms that it has produced all executed contracts that have governed the provision of any antimicrobial intervention program provided to customers from February 9, 2021, to present, we will be happy to discuss an appropriate date cut-off for the e-mail searches. Furthermore, if Zee would like to propose search terms, we will review and provide additional suggestions to help resolve the current dispute. Due to the significant delays in Zee's discovery responses—all of which were of Zee's own making—we ask that Zee agree to complete its search, collection, review, and production by October 31, 2021.

We will not permit Zee, who filed this lawsuit in the first place, to continue to utilize the meet and confer process as a filibuster. If this proposal is not acceptable to Zee, please let us know, and we will file our motion with the Court. We are happy to discuss the proposal during a meet and confer should further clarification be needed, but we believe we are at an impasse that cannot be resolved through the piecemeal concessions proposed in your September 17, 2021, email, which did not fully address the concerns we have repeatedly raised with you.

Very truly yours,

**PATTERSON INTELLECTUAL PROPERTY LAW, P.C.**

*/s/ Seth R. Ogden/*

Seth R. Ogden
sro@iplawgroup.com